Case No. 21-2134

---

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

SHEET METAL WORKERS' HEALTH & WELFARE FUND OF NORTH
CAROLINA, *et al.*,

*Plaintiffs/Appellees*,

v.

STROMBERG METAL WORKS, INC.,

*Defendant/Appellant*.

On Appeal from the United States District Court
for the Eastern District of North Carolina
Case No. 5:21-cv-101-BO

---

BRIEF OF APPELLEES

Narendra K. Ghosh
PATTERSON HARKAVY, LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
(919) 942-5200
nghosh@pathlaw.com

Karla M. Campbell
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
karlac@bsjfirm.com

Diana Migliaccio Bardes
MOONEY, GREEN, SAINDON,
MURPHY & WELCH, PC
1920 l Street, NW Suite 400
Washington, DC 20036
(202) 783-0010
dbardes@mooneygreen.com
*Counsel for Appellees*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Fourth Circuit

Rule 26.1, Appellees hereby make the following disclosures:

1.    Is party/amicus a publicly held corporation or other publicly held entity?
      NO

2.    Does party/amicus have any parent corporations?
      NO

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held
      corporation or other publicly held entity?
      NO

4.    Is there any other publicly held corporation or other publicly held entity
      that has a direct financial interest in the outcome of the litigation?
      NO

5.    Is party a trade association? (amici curiae do not complete this question)
      NO

6.    Does this case arise out of a bankruptcy proceeding?
      NO

7.    Is this a criminal case in which there was an organizational victim?
      NO

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ...................................................................i

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES ...............................................................iv

JURISDICTIONAL STATEMENT .....................................................1

COUNTERSTATEMENT OF THE ISSUES...........................................1

STATEMENT OF THE CASE..............................................................2

    I.   FACTUAL BACKGROUND ......................................................2

    II.  PROCEDURAL BACKGROUND..............................................5

SUMMARY OF THE ARGUMENT ....................................................6

ARGUMENT ...................................................................................7

    I.    STROMBERG FAILED TO MAKE CONTRIBUTIONS
        REQUIRED BY THE COLLECTIVE BARGAINING
        AGREEMENT.........................................................................7

    II.   STROMBERG FAILS TO IDENTIFY ANY REVERSIBLE
         ERROR IN THE DISTRICT COURT'S RULING IN FAVOR OF
         APPELLEES ........................................................................10

         A.   The Union Cannot Waive Stromberg's Delinquency to the
             Funds .........................................................................10

         B.   The District Court Correctly Calculated Stromberg's
             delinquency ................................................................17

a.  The Funds Are Entitled to Rely on Collectively Bargained Ratios ...........................................................................18

b.  The Funds Are Entitled to Rely on the Audits ..............................23

CONCLUSION ..............................................................................29

CERTIFICATE OF COMPLIANCE ...................................................31

CERTIFICATE OF SERVICE ..........................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*,
118 F.3d 1018 (4th Cir. 1997) .................................................*passim*

*Bakery and Conf. Union and Indus. Int'l Health Benefits and Pension Funds v. New Bakery Co. of Ohio*,
133 F.3d 955 (6th Cir. 1998) .......................................................11, 19

*Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*,
929 F.3d 135 (4th Cir. 2019) ...........................................7, 12, 13, 17

*Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*,
839 F.2d 1333 (9th Cir. 1988) ...............................................26

*Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*,
41 F.3d 182 (4th Cir. 1994) ....................................................28

*Brogan v. Swanson Painting Co.*,
682 F.2d 807 (9th Cir. 1982) ..................................................22

*Burgher v. Feightner*,
722 F.2d 1356 (7th Cir. 1983) .................................................8

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
472 U.S. 559 (1985)....................................................20, 24

*Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*,
870 F.2d 1148 (7th Cir. 1989) ..............................................14

*Clark v. Ryan*,
818 F.2d 1102 (4th Cir. 1987) ..............................................12

*Colin v. Marconi Com. Sys. Employees' Ret. Plan*,
335 F. Supp. 2d 590 (M.D.N.C. 2004) ............................................27

*Combs v. King*,
  764 F.2d 818 (11th Cir.1985) ...............................................................26

*Connors v. Hallmark & Son Coal Co.*,
  935 F.2d 336 (D.C. Cir. 1991) ............................................................23

*Flynn v. Dick Corp.*,
  481 F.3d 824 (D.C. Cir. 2007) ............................................................22

*International Painters & Allied Trades Industry Pension Fund v.
  Madison Coatings Co.*,
  No. 17-1559, 2019 WL 5625759 (D. Md. Oct. 31, 2019) ...........................16, 17

*Irigaray Dairy v. Dairy Employees Union Local No. 17 Christian
  Labor Ass'n of U.S. Pension Tr.*,
  43 F. Supp. 3d 1080 (E.D. Cal. 2014) ..............................................15

*Laborers Pension Tr. Fund-Detroit & Vicinity v. Rocwall Co.*,
  357 F. App'x 641 (6th Cir. 2009) ......................................................22

*Lewis v. Benedict Coal Corp.*,
  361 U.S. 459 (1960) ....................................................................16, 17

*M & G Polymers USA, LLC v. Tackett*,
  574 U.S. 427 (2015) .........................................................................13

*Maryland Elec. Indus. Health Fund v. MESCO, Inc.*,
  No. CIV.A. ELH-12-505, 2014 WL 853237 (D. Md. Feb. 28,
  2014) ...........................................................................................25

*Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*,
  30 F.3d 692 (6th Cir. 1994) ...............................................................26

*Nat'l Elec. Ben. Fund v. Rabey Elec. Co.*,
  No. 11-CV-00184-AW, 2012 WL 3854932 (D. Md. Sept. 4, 2012) ...........12, 27

*Nationwide Mut. Ins. Co. v. Darden*,
  503 U.S. 318 (1992) ........................................................................8, 9

*Operating Engineers Local 324 Health Care Plan v. G&W Constr.
  Co.*,
  783 F.3d 1045 (6th Cir. 2015) ..........................................................14

*Orrand v. Scassa Asphalt, Inc.*,
    794 F.3d 556 (6th Cir. 2015) ...............................................................14

*Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex*
    *Constr. Co.*,
    932 F.2d 1443 (11th Cir. 1991) ..........................................................14

*Ret. Comm. of DAK Americas LLC v. Brewer*,
    867 F.3d 471 (4th Cir. 2017) ..............................................................24

*Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Harborview*
    *Healthcare Ctr. Inc.*,
    191 F. Supp. 3d 13 (D.D.C. 2016).......................................................28

*Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*,
    32 F.3d 120 (4th Cir. 1994) ..................................................................7

*Stockwell v. Hamilton*,
    163 F. Supp. 3d 484 (E.D. Mich. 2016) .............................................21

*Trustees of Const. Indus. & Laborers Health & Welfare Tr. v.*
    *Interstate Hotel Installation*,
    No. 2:12-CV-00353-MMD, 2013 WL 820000 (D. Nev. Mar. 5,
    2013) ...............................................................................................15, 16

*Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const.*
    *Co.*,
    618 F. App'x 246 (6th Cir. 2015) ......................................................22

*Trustees of Nat'l Asbestos Workers Med. Fund v. Gamble Insulation*
    *Co.*,
    No. CV WDQ-04-291, 2006 WL 8456775 (D. Md. Jan. 4, 2006).....................27

*Trustees of the Plumbers & Gasfitters Loc. 5 Ret., Sav. Fund v.*
    *Conditioned Air Sys., Inc.*,
    No. CIV. CCB-12-730, 2014 WL 1292105 (D. Md. Mar. 28, 2014)................25

*Trustees of the Sheet Metal Workers Local Union No. 80 Pension Tr.*
    *Fund v. MJ Mech. Servs., Inc.*,
    2014 WL 5307605 (E.D. Mich. Oct. 16, 2014)................................22

vi

*Trustees of the Teamsters Construction Workers Local No. 13 v. Hawg N Action, Inc.*,
651 F.2d 1384 (10th Cir. 1981) ........................................................22

*Walsh v. Schlecht*,
429 U.S. 401,407 (1977)......................................................................21

*Whitworth Bros. Storage Co. v. Central States, S.E. & S.W. Areas Pension Fund*,
982 F.2d 1006 (6th Cir.1993) .........................................................23

**State Cases**

*Morelli v. Morelli*,
720 P.2d 704 (Nev. 1986) ...............................................................16

**Federal Statutes**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1404(a) ............................................................................5, 6

29 U.S.C. 185(a) .....................................................................................8

29 U.S.C. § 1059 ....................................................................................24

29 U.S.C. §§ 1132 and 185 ...................................................................1

29 U.S.C. § 1145 .................................................................................7, 11

Employee Retirement Income Security Act § 515, 29 U.S.C. ........................*passim*

ERISA ....................................................................................................*passim*

Labor-Management Relations Act § 1145, and § 301, 29 U.S.C. § 185 ...................2

LMRA § 301 ....................................................................................8, 20

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of North Carolina had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, as the claims asserted in the Amended Complaint arose under the laws of the United States, specifically, 29 U.S.C. §§ 1132 and 185.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, and Appellee does not dispute that Appellant timely filed a notice of appeal with the District Court. This appeal is from a final judgment issued by the District Court on September 22, 2021.

## COUNTERSTATEMENT OF THE ISSUES

1. Did the district court correctly find that the Appellee Funds are entitled to judgment as a matter of law on their claims that Appellant Stromberg owes $1,254,316.40 in past-due contributions pursuant to the terms of two collective bargaining agreements? **YES.**

## STATEMENT OF THE CASE

### I.     FACTUAL BACKGROUND

Plaintiffs/Appellees Sheet Metal Workers' Health & Welfare Fund of North Carolina, Sheet Metal Workers' Union Training Fund of North Carolina, Sheet Metal Workers' National Pension Fund, International Training Institute for the Sheet Metal and Air Conditioning Industry, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, National Stabilization Agreement of the Sheet Metal Industry, and Sheet Metal Workers' International Scholarship Fund (collectively "the Funds" or "Appellee Funds") are eight Taft-Hartley benefit funds providing pension, health, and other welfare benefits to thousands of participants and their beneficiaries who work for various signatory sheet metal contractors across the country. Joint Appendix, Docket Entry 21 ("JA"), at 29-31 of 2259.  The Funds brought this collection action under Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, and Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, against Defendant/Appellant Stromberg Metal Works, Inc. ("Stromberg") following Stromberg's failure to meet its contribution obligations to the Funds.  JA 28-37.

Stromberg is a sheet metal fabrication and installation company signatory to two collective bargaining agreements relevant to this matter – one with Local 5 and

2

one with Local 100 of the Sheet Metal, Air, Rail and Transportation Union ("SMART") (hereinafter the "CBAs"). JA 1791. The CBAs require Stromberg to use referrals from the local union hiring halls as their first source of manpower to staff projects. JA 2202. Although the CBAs permit Stromberg to hire employees who are not referred from the local unions in certain instances, the CBAs obligate Stromberg to refer those new employees to the local unions for assessment of their skill level and corresponding classification and rate of pay. JA 1859.

The CBAs also require Stromberg to remit contributions to the Funds for hours of covered work performed by every covered employee. The hourly contribution rates depend on the classification of the employee performing the covered work. *Compare* JA 1868 ($6.17/hr pension contribution for journeymen) *with* JA 1859 (stating pension contribution for classified employee is 5% of journeyman rate). The CBAs further include mandatory staffing ratios of journeyman (skilled) to non-journeyman (unskilled or less skilled) sheet metal workers on Stromberg's jobsites. JA 1869. The staffing ratios, contribution requirements, and other provisions of the CBAs extend to "all employees of the employer engaged in" sheet metal work, as defined in the CBAs. JA 1849 (Article 1 § 1).

From 2015 to 2019, Stromberg employed more than 100 sheet metal workers from staffing agencies to perform work covered by the CBAs, but failed to

3

refer these individuals to the local unions as required by the CBAs.[1]  JA 528, 618.

In or about June 2017, Stromberg began submitting reports and payments to the

Funds on behalf of some of these temporary sheet metal workers, but at the lowest

classification rate, a "classified employee."  JA 34, 43.  Thereafter, the Funds

engaged a third-party auditor, Calibre CPA Group, PLLC ("Calibre"), to conduct

an audit of Stromberg's payroll records pursuant to the Funds' collections

procedures.  JA 34, 2019-20.

The audit revealed significant underpayment and underreporting of

contributions.  JA 2022-49, 2052-65. Specifically, the audit showed that (1)

Stromberg failed to report and make corresponding payments for covered hours

worked by both sheet metal workers hired through staffing agencies and sheet

metal workers hired through the CBAs' referral process, and (2) by classifying all

temporary sheet metal workers, regardless of their experience or skill, at the lowest

classification, Stromberg underpaid contributions as required by the CBAs'

mandatory journeyman to non-journeyman ratios.

While the Funds were grappling with the audit process, union officials with

SMART Local 5 filed a grievance against Stromberg, as permitted by the CBA,

---

[1] In their summary judgment briefing, the Appellee Funds referred to these workers hired through staffing agencies as "Temporary Employees."  The district court termed them "temporary sheet metal workers."  In this brief, the Funds adopt the district court's terminology for ease of reference.

complaining that Stromberg circumvented the hiring hall procedure by using

staffing agencies to hire sheet metal workers.  Local 5 and Stromberg met and

negotiated a resolution of the grievance, which those parties memorialized in a

settlement agreement on or about January 14, 2019 ("Grievance Settlement").  JA

476-77.  The Funds were not party to the Grievance Settlement but learned of it

after the fact.

## II.    PROCEDURAL BACKGROUND

The Funds filed the instant lawsuit to collect the amounts due pursuant to the

audit from Stromberg in the U.S. District for the Middle District of Tennessee on

November 1, 2019. JA 1, 28.  Early in the case, Stromberg filed a motion to

transfer venue pursuant to 28 U.S.C. § 1404(a).  While that motion was pending,

the parties engaged in extensive discovery and fully briefed cross-motions for

summary judgment.  Along with the cross-motions for summary judgment, the

Funds contemporaneously filed a motion to strike certain affidavit portion, JA

2099, and Stromberg contemporaneously filed two motions to strike, JA 2126,

2130.

On March 1, 2021, the district court granted Stromberg's pending motion to

transfer venue and transferred the entire case to the Eastern District of North

Carolina.  JA 2189.  In this new venue, the district court permitted the parties to

file supplemental briefs addressing the legal authorities and citations applicable to

the parties' cross-motions for summary judgment in the Fourth Circuit.  JA 24.

The district court heard oral argument on the pending motions on June 2, 2021.  *Id*.

On September 22, 2021, the district court entered an order denying Stromberg's

motion for summary judgment, granting the Funds' motion for summary judgment,

granting in part and denying in part the Funds' motion to strike, and denying

Stromberg's two motions to strike (hereinafter the "the Order").  JA 2200-2219.

The district court entered judgment in the Funds' favor in the total amount of

$1,254,316.40, plus an additional award of attorneys' fees and costs to be

determined at the conclusion of this appeal.  JA 2218-19.

On October 6, 2021, Stromberg filed its notice of appeal.  JA 25.  Before this

Court, Appellant has raised one narrow defense as to liability and more generally

challenges the district court's calculation of damages.  Appellant does not

challenge the portions of the Order relating to the various motions to strike, nor

does it challenge the court's award of attorneys' fees and costs to the Funds.

## SUMMARY OF THE ARGUMENT

The district court correctly granted summary judgment in favor of the

Appellee Funds, and denied summary judgment in favor of Appellant Stromberg.

On appeal, Stromberg raises only narrow arguments, namely that a non-party settled

the Funds' claims and that the district court incorrectly calculated the damages

awarded.  However, these arguments fly in the face of both settled precedent in this

6

Circuit and, more broadly, federal labor law.  For these reasons, as more fully set forth herein, the district court correctly granted judgment to the Funds, and the Court should affirm the court's order.

## ARGUMENT

This Court reviews the district court's grant of summary judgment to the Appellee Funds *de novo*, "employing the same standards applied by the district court."  *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 123 (4th Cir. 1994).  In this case, this district court viewed the record evidence through the lens of Appellant's collectively bargained obligations and correctly found that the Appellee Funds were entitled to summary judgment.   There being no error in the district court's reasoning, this Court should affirm its judgment.

## I.    STROMBERG FAILED TO MAKE CONTRIBUTIONS REQUIRED BY THE COLLECTIVE BARGAINING AGREEMENT

Section 515 of ERISA requires every employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  In other words, Section 515 is "a separate federal cause of action permitting multiemployer plans to collect contributions from employers so long as the plan is able to establish an obligation to contribute under the terms of the plan's governing documents or the CBA."  *Bd. of Trustees, Sheet Metal Workers' Nat'l*

*Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 139 (4th Cir. 2019). Section 301 of the LMRA offers a similar federal cause of action to enforce collectively bargained contract terms. *See, e.g.*, *Burgher v. Feightner*, 722 F.2d 1356, 1359 (7th Cir. 1983) (ERISA was "intended to supplement rather than supersede the right existing under 29 U.S.C. 185(a).").

The crux of the parties' dispute is whether Stromberg owes contributions to the Appellee Funds for work hours performed by "temporary sheet metal workers hired by Stromberg through staffing agencies." Order, p. 11, JA 2210.[2] To answer this question, the district court correctly turned first to the language of the parties' CBA, which "covers 'the rates of pay and conditions of employment of all employees of the employer engaged in' sheet metal work." *Id*. (citing Art. 1, § 1 (JA 1849)). Because the parties agree that these temporary workers were performing sheet metal work, "the only question is whether the temporary sheet metal workers were employees of Stromberg under the CBA." *Id*.

The district court applied the test expressed in *Darden* to the undisputed facts in the case and found that the temporary workers were Stromberg's "employees." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992). The

---

[2] The Funds also alleged that Stromberg failed to make contributions for certain of its employees hired through the local unions' hiring hall, not through a staffing agency. Stromberg has never disputed that it owes contributions for those unionized employees. *See* Order p. 14, JA 2213, n. 4.

district court found particularly relevant the deposition testimony of Appellant's 30(b) witness, who testified that there was no difference between a temporary worker and [Stromberg's] regular workforce" and employees hired through the staffing agencies were controlled, managed and supervised by Stromberg. JA 1814-15; Order, p. 12, JA 2211. Ultimately, the district court found, "[e]ven viewing the evidence and inferences in the light most favorable to Stromberg, the record demonstrates that Stromberg controlled the manner and means by which the product was accomplished by the temporary sheet metal workers, the primary inquiry under *Darden*." Order p. 13, JA 2212. This conclusion makes Stromberg liable for contributions to the Funds for these temporary sheet metal workers' hours.

*Importantly*, Stromberg does not appeal the district court's conclusion that the temporary workers are Stromberg's employees, which conclusion triggers the company's contribution obligation under the terms of the CBA. Stromberg does not dispute the court's interpretation of the relevant terms of the CBA, nor does it dispute the court's analysis of the *Darden* factors.

Instead, Stromberg raises a defense to its liability, namely that a non-party, one of the local unions, waived its delinquency to the Funds. As explained below, that argument does not absolve Appellant of its liability to the Appellee Funds. As the district court correctly concluded, the undisputed facts demonstrate that the

temporary workers were Stromberg's employees performing covered work as per

the terms of the CBA.  Thus, Section 515 required Stromberg to make

contributions on their behalf, which Stromberg failed to do.  This Court should

affirm the grant of summary judgment in favor of the Appellee Funds.

## II.    STROMBERG FAILS TO IDENTIFY ANY REVERSIBLE ERROR IN THE DISTRICT COURT'S RULING IN FAVOR OF APPELLEES

Appellant's brief raises two issues, one as to liability and one as to damages.

However, both arguments fail for the reasons set forth herein.

### A.    The Union Cannot Waive Stromberg's Delinquency to the Funds

The Funds begin by addressing Stromberg's argument on liability,

specifically "[w]hether a grievance settlement agreement modified Stromberg's

obligation to contribute to Plaintiffs."  Appellant Br., p. 2.

Stromberg concedes that the CBA terms obligate it to pay contributions to

the Funds for the temporary workers' work hours, but argues that the 2018

Grievance Settlement modified the CBA so as to eliminate that obligation.

Appellant Br., pp. 44-46 ("This Grievance Agreement resolved the grievance and

served as a contract that modified the CBA as to this [work performed by

temporary workers] not being covered work under the CBA.").  Appellant cannot

point to any express language in the Grievance Settlement showing an intent to

modify the CBA in such a momentous way.  Instead, Stromberg asks the Court to

imply that modification from the document's silence about contributions to the Funds. Appellant Br., p. 49 (applying "maxim of *expressio unius est exclusio alterius*"). Alternatively, Stromberg urges the Court to interpret the word "etc." in ¶ 14 of the Grievance Settlement[3] to include benefit contributions. *Id*., pp. 49-50.

Neither interpretation of the Grievance Settlement works to relieve Stromberg of its contractual obligations to the Appellee Funds. The very purpose of ERISA Section 515 is to permit multiemployer employee benefit funds like Appellees to enforce their right to receive employer contributions "in accordance with the terms and conditions of such plan or such [collective bargaining] agreement" creating the payment obligation. 29 U.S.C. § 1145. In other words, "multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer, and the union." *Bakery and Conf. Union and Indus. Int'l Health Benefits and Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998). It is well settled that "an employer's obligation to a multiemployer fund is determined by the plain meaning of the language used in the collective bargaining agreement." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997).

---

[3] The relevant part of ¶ 14 reads: "Stromberg agrees to let go all temporary workers by January 31, 2019. In return, Local 5 agrees not to go back against Stromberg for working dues, lost wages etc. based on the hiring of temporary workers." JA 477.

Just as "the plan is not party to the CBA between the employer and union," Four-C-Aire, 929 F.3d at 138, here, the Funds are not a party to the grievance process. As this Court has recognized, the purpose of the Section 515 action is to avoid forcing a plan to rely on litigation between employers and unions to enforce contribution requirements because the plan and the union "do[] not have the same duties and interests." *Id*. at 151. The Funds are entitled to rely on "the literal terms" of the CBA, which undisputedly provide for contributions to the Funds for *all* sheet metal workers' hours. *See, e.g.*, *Nat'l Elec. Ben. Fund v. Rabey Elec. Co.*, No. 11-CV-00184-AW, 2012 WL 3854932, at *5 (D. Md. Sept. 4, 2012) (finding similar CBA language to require contributions for "all electrical workers who performed the jobs as classified in . . . the CBA, whether they were temporary, permanent, unionized, or non-unionized."); *Clark v. Ryan*, 818 F.2d 1102, 1104–05 (4th Cir. 1987) ("We agree with appellants that these [CBA] provisions plainly require employers to contribute to the three funds on behalf of all their employees, both union and non-union[,]" where "[t]he language of the relevant agreements repeatedly refers to the type of work performed, not to the status of union membership.").

Stromberg's contract defenses are unavailing. "Section 515 strengthens the position of the multiemployer plans" by eliminating defenses that the employer would have "under common law contract principles." *Ralph's Grocery Co.*, 118

12

F.3d at 1021. "We interpret [CBAs], including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). "Section 515 – as a statement of federal labor policy – bestows favored status on multiemployer plans, allowing them to collect contributions from employers by enforcing the contribution requirements in accordance with the terms and conditions of the plan or CBA." *Four-C-Aire, Inc.*, 929 F.3d at 139. "Consequently, an employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in the agreement." *Ralph's Grocery* at 1021 (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989)).

Stromberg's reading of the Grievance Settlement is a flagrant attempt to end run this clear prohibition. The Grievance Settlement was entered into between Stromberg and Local 5. Local 5, however, could not settle claims for the Funds, as they are separate legal entities. *See Four-C-Aire*, 929 F.3d at 151. Instead, the Funds are entitled by law to rely on the literal terms of the CBAs in their collection activities, which is precisely what they did in filing this lawsuit. Even if Stromberg's implied waiver argument had merit, which it does not, federal labor law prevents that defense to the Appellee Funds' action. This outcome is

13

necessary to keep employers and local unions from negating the legitimate interests of multiemployer pension plans in maintaining uniformity. "An employer's wish to set the terms on which he will deal with a pension trust is not a self-fulfilling prophesy." *Gerber Truck,* 870 F.2d at 1156. To hold otherwise, "would allow employers and unions to bargain away the rights and powers of fund trustees in agreements to which the trustees were not a party." *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co*., 932 F.2d 1443, 1451 (11th Cir. 1991); see also *Operating Engineers Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1052 (6th Cir. 2015) (holding waiver defense inapplicable to Section 515 claim); *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 563 (6th Cir. 2015) ("Congress added § 515 to ERISA to free pension and welfare funds from defenses that pertain to the unions' conduct."). As the district court correctly held and Stromberg does not dispute, "[t]he plain terms of the Local 5 CBA . . . require Stromberg to make contributions to the plaintiff Funds." Order, p. 11, JA 2210.[4]  Stromberg's waiver defense is precisely the type of "self-fulfilling prophesy" prohibited by law.

---

[4] Prior to this lawsuit, Stromberg agreed that it owed contributions for the temporary sheet metal workers, and it began reporting temporary sheet metal workers as employees to the Funds in April 2017 and making contributions on their work hours at the classified employee rate. Appellant Br., pp. 16, 27. It continued making those contributions to the Funds over the span of nearly two years. The Funds have argued that Stromberg should be estopped from now disclaiming liability for contributions on behalf of those employees so many years

While "the actual intent of the contracting parties (i.e., the employer and the union) is immaterial" to a Section 515 action, *Ralph's Grocery* at 1021, it bears noting that the union did not intend to settle or waive the delinquency to the Funds.

> Q.   I'm asking you, is there anything in Exhibit 37 [grievance settlement] that says that the health fund or any of the trust funds that are Plaintiffs in this case could treat the workers that came from the temporary service agencies as persons for whom contributions would be due?
> A.   It doesn't -- it doesn't specifically go after that part of that, but we're, you know, not the pension fund or the health fund.  So, I mean, we're not the ones going after that.

JA 681.

This testimony undermines Appellant's specious interpretation of the Grievance Settlement.

Appellant relies on a single case, *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Interstate Hotel Installation*, No. 2:12-CV-00353-MMD, 2013 WL 820000 (D. Nev. Mar. 5, 2013), to support its argument that the union could modify the CBA terms so as to waive the entire delinquency to the Funds. Appellant Br., p. 47.  However, *Interstate Hotel* is contrary to *Ralph's Grocery* and

---

after voluntarily accepting liability, although the district court did not reach the argument.  *See Irigaray Dairy v. Dairy Employees Union Local No. 17 Christian Labor Ass'n of U.S. Pension Tr.*, 43 F. Supp. 3d 1080, 1089 (E.D. Cal. 2014) (citing *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 884 (9th Cir.1996)) (relying on the purposes of Section 515 in finding the employer was estopped from asserting it had no responsibility to the fund after making contributions to the fund for a period of time).

its progeny, which control in this Circuit.  Further, *Interstate Hotel* relies on a

single case, *Morelli v. Morelli*, 720 P.2d 704, 704 (Nev. 1986), which was decided

under Nevada law, not ERISA.  Thus, *Interstate Hotel* is inapplicable.

Contrary to the Appellant's assertion that *Interstate Hotel* is the only case

"directly on point," Appellant Br., p. 47, Appellees cite a District of Maryland

decision, *International Painters & Allied Trades Industry Pension Fund v.*

*Madison Coatings Co.*, No. 17-1559, 2019 WL 5625759 (D. Md. Oct. 31, 2019).

In *Madison Coatings*, the court applied *Ralph's Grocery* and *Lewis v. Benedict*

*Coal Corp.*, 361 U.S. 459 (1960), to a similar argument made by an employer. In

that case, the employer entered into a settlement agreement with the local union

and one benefit fund, a local pension fund, for unpaid contributions. *Madison*

*Coatings*, 2019 WL 5625759, at *2. Another benefit fund to which the employer

was obligated, a national pension fund, then filed suit for unpaid contributions. The

employer raised the settlement as a defense, asserting that the collective bargaining

agreement allowed the local union to collect contributions for the national pension

fund and release its claims.  *Id.*, at *4. The court found the employer's position

"unsupported by law," noting "the relationships between individual local unions

and multiemployer plans are complex, but ERISA Section 515 was intended to

clarify the rights and relationships between the entities in favor of multiemployer

benefit plans." *Id.* (citing *Ralph's Grocery*, 118 F.3d at 1021). It also noted that the

Supreme Court in *Benedict Coal* held that a fund's ability to collect as a third-party beneficiary to a collective bargaining agreement is unaffected by disputes or damages between a union and an employer. *Id.* (*citing Benedict Coal*, 361 U.S. at 470-71). Thus, the employer's claims against the local union and the local funds did not affect the national fund's rights to enforce the agreement as a third-party beneficiary, and the national funds were "permitted to pursue their unpaid contributions from [the employer] irrespective of any agreement that the [the employer] may have reached with local union chapters or [the local] pension funds." *Id.,* at *4.

Relying on *Madison Coatings*, *Four-C-Aire*, and *Ralph's Grocery* as to Appellant's asserted defense, the district court correctly held that it "agrees and concludes that the law in this circuit clearly sets out that the settlement agreements between Local 5 and Stromberg are not binding on the plaintiff funds nor do the preclude the Funds from seeking delinquent contributions from Stromberg." Order, p. 15, JA 2214.

Fourth Circuit precedent dictates the outcome in this case as to liability. The Funds have a meritorious claim for delinquent contributions pursuant to ERISA Section 515, and Appellant cannot defend that claim with contract defenses stemming from its grievance settlement with one of the signatory unions.

**B.    The District Court Correctly Calculated Stromberg's Delinquency**

Appellant's remaining arguments challenge the district court's damages calculation. Appellant Br., pp. 25-44 (Sections I and II). These sections of Appellant's brief rely on mischaracterizations of the Fund's claims and the auditor's findings. However, proper context makes clear that the district court correctly applied the CBA ratio to auditor's findings to calculate the delinquency.

### a. The Funds Are Entitled to Rely on Collectively Bargained Ratios

The CBAs contain ratios of journeymen to non-journeymen sheet metal workers that Stromberg must employ and maintain on its jobsites. The Local 5 CBA sets a 1:2 ratio of journeymen to non-journeymen, or 1 journeyman to 1 apprentice to 1 classified worker. JA 1869.[5] The district court found, and Appellant does not dispute, that the ratio provision of the CBA is binding on signatory employers. Order, p. 11, JA 2210; JA 1812. Further, Stromberg does not dispute that the CBA ratio applied to its work during the audit period. Nevertheless, Appellant argues that the Funds lack standing to enforce the ratios. Appellant Br., pp. 38-44. Both arguments fail.

Appellant repeatedly references a Resolution 78 ratio in its brief. A Resolution 78 variance signed by a SMART local union permits that employer to

---

[5] Both of the CBAs contain ratios which differ slightly. Only the Local 5 CBA ratio is relevant here, as all of the temporary sheet metal workers performed work within the jurisdiction of Local 5. Stromberg did not employ any sheet metal workers from staffing agencies within Local 100's jurisdiction.

employ fewer journeymen on a specific job site.  In this case, the Resolution 78 variances referenced by Appellant permitted it to utilize a 1:4 ratio, or 1 journeyman to 2 apprentices to 2 classified workers, on two specific job sites during the relevant period, the Mary Ellen Jones and New Bern projects. These were not the only two job sites on which Stromberg performed covered word during the relevant period. Accordingly, in order for the Funds to utilize the ratio for these two job sites, Stromberg would have had to keep and provide accurate records of the covered work performed on these job sites to the auditors for the auditors to apply the Resolution 78 ratios. Stromberg did not do so, and accordingly, the district court correctly applied the Local 5 CBA ratio.

The Funds have standing to remedy Stromberg's violation of the collectively bargained ratio requirement.  Courts have repeatedly held that Taft-Hartley funds stand in a position similar to a third-party beneficiary or a holder in due course with respect to collective bargaining agreements. *See, e.g.*, *New Bakery Co. of Ohio*, 133 F.3d at 959 ("The fund thus stands much like a holder in due course in commercial law who is entitled to enforce the writing without regard to understandings or defenses applicable to the original parties.").  Funds benefit from staffing ratios in CBAs because they create predictability in income streams from employer contributions.  The ratios are binding on Stromberg, and the Funds need not show an injury caused by Stromberg's violation of the ratios that is separate

19

and distinct from the injury caused by Stromberg's breach of the contribution requirements, as Appellant argues. Appellant Br., p. 38. The Funds are self-funded benefit plans, which rely entirely on employer contributions for income; Stromberg's failure to make required contributions unquestionably caused injury to the Funds. This injury to the plans, and by extension all participants and beneficiaries of the plans, gives Plaintiffs constitutional and statutory standing.

Appellant points to no case in which any court found that a multiemployer fund or its trustees lacked standing to enforce any CBA provision through a ERISA Section 515 or LMRA Section 301 action. Likewise, Appellant suggests that the Appellee Funds must demonstrate their detrimental reliance on the ratios, Appellant Br., p. 40, but it identifies no case in which a court has read reliance into a prima facie case under either statute. The notion that a fund would lack standing to enforce CBA violations that deprive the fund of contributions flies in the face of settled authority that plan trustees have all the powers necessary "for assuring full and prompt collection of contributions owed to the plan," under both ERISA and the common law. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 573 (1985). Indeed, fund trustees have a fiduciary obligation to pursue delinquent employer contributions through actions enforcing CBA violations. Delinquencies diminish the trust corpus, which trustees have an obligation to protect. This injury to the plans, and by extension all participants and

20

beneficiaries of the plans, gives Appellees both statutory and constitutional

standing. *See, e.g.*, *Stockwell v. Hamilton,* 163 F. Supp. 3d 484, 490 (E.D. Mich.

2016) ("The fiduciary's claims must relate to an injury to the plan or the plan's

participants or beneficiaries, rather than to its own injuries.").

It is true that the Funds do not routinely enforce the ratios through litigation.

That is because signatory employers do not routinely violate the referral

procedures in the CBAs.  The CBAs require that signatory employers refer all new

hires to the union for proper classification, which classification dictates the hourly

contribution rate for that new employee to the Funds.  Here, as the district court

noted, "the temporary sheet metal workers were not classified by Local 5 as

journeyman, apprentice, pre-apprentice, or classified because, as it admits,

Stromberg did not send all of its temporary sheet metal workers to the union hall

for classification in violation of the CBA."  Order, p. 14, JA 2213.

The Funds' calculation of damages here is not unlike when a plan seeks

damages for an employer's violation of a subcontracting provision, which the

Funds advanced as an alternative argument before the district court.  When a

signatory employer violate the subcontracting prohibition contained in a CBA, the

plan calculates the required payments due from the violating employer measured

by the hours worked by the subcontractor's employees, notwithstanding the fact

that the subcontractor's employees are not participants in the fund.  *See Walsh*

*v. Schlecht*, 429 U.S. 401,407 (1977). It is the plan itself that suffers the injury and is entitled to recovery. See *Trustees of the Teamsters Construction Workers Local No. 13 v. Hawg N Action, Inc.*, 651 F.2d 1384, 1386-87 (10th Cir. 1981) ("[T]he trustees are entitled to damages in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties.").[6] So too here, the Funds are entitled to damages in a sum equal to that which they would have been received if Stromberg fully performed under the CBAs and abided by the ratios.

Stromberg next argues that it should be rewarded for its admitted violation with a damages calculation using the lowest hourly contribution rate, that of an unskilled classified worker. Appellant Br., p. 25. Stromberg speciously suggests that the Funds need only cross-reference the audit with Local 5's list of journeymen and apprentices. *Id.*, p. 26. Stromberg knows that none of the temporary sheet metal workers would appear on that list, precisely because Stromberg failed to refer them to the union. As the district court correctly

---

[6] Although this Court has not considered such a subcontracting case, other Circuits have come to the same conclusion. *See, e.g., Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 256 (6th Cir. 2015); *Trustees of the Sheet Metal Workers Local Union No. 80 Pension Tr. Fund v. MJ Mech. Servs., Inc.*, 2014 WL 5307605, at *8 (E.D. Mich. Oct. 16, 2014); *Laborers Pension Tr. Fund-Detroit & Vicinity v. Rocwall Co.*, 357 F. App'x 641 (6th Cir. 2009); *Flynn v. Dick Corp.*, 481 F.3d 824, 833 (D.C. Cir. 2007); *Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir. 1982).

reasoned, "[to] hold that Stromberg should be rewarded for its failure to comply with the terms of the CBA would go against the intent of Section 515 actions." Order, p. 14, JA 2213. Because Stromberg's violations of the referral procedure thwarted individualized classification of its employees, the Funds applied the CBA ratio as a default measure for calculating the delinquency. Federal labor law simply does not require the Funds to comb through years of Stromberg's employment files in an attempt to ascertain the skill level and experience in the sheet metal trade of each of the 100+ individual temporary workers in order to calculate the delinquency. The district court agreed.

### b. The Funds Are Entitled to Rely on the Audits

Finally, Appellant takes issue with the district court's reliance on the Fund's audit reports to calculate the delinquency. Appellant Br., pp. 25-36. Employer reporting and payment to the Appellee Funds works on the honor system. JA 33; *see also Whitworth Bros. Storage Co. v. Central States, S.E. & S.W. Areas Pension Fund*, 982 F.2d 1006, 1018 (6th Cir.1993) (acknowledging the plan operates under a self-reporting system); *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342-43 (D.C. Cir. 1991) ("the Trustees remain dependent upon the operators' honesty and accuracy: the records with which the Trustees might verify the accuracy of the operators' reporting--as well as the accuracy of their contributions--both originate and stay with the operators."). However, as a check, the governing plan documents

provide that the Funds may audit a contributing employer's payroll records to ensure that past reporting and payments are accurate. Indeed, inherent in a plan fiduciary's duty to preserve and maintain trust assets is an obligation to "determine exactly what property forms the subject-matter of the trust [and] who are the beneficiaries." *Cent. States, Se. & Sw. Areas Pension Fund*, 472 U.S. at 572. ERISA mandates employers maintain accurate records sufficient to ascertain employee benefits. 29 U.S.C. § 1059.

In this case, the Funds engaged an independent auditing company, Calibre, to review Stromberg's payroll records to catalogue employee work hours. Upon completion, Calibre provided the audits to the Funds, who each conducted a separate calculation of the delinquency, as well as penalties and interest due under the terms of the plan, using the audit findings. JA 2019-20, 2050-51.

This auditing process is codified in written collection policies adopted by the Funds. Fund administrators, who each submitted an affidavit in this case, followed those policies in utilizing Calibre's audit reports to calculate the total delinquency, which these administrative officers are bound to do.[7] *See Ret. Comm. of DAK*

---

[7] Mr. Ken Anderson is the audit and delinquency manager for the National Pension Fund. Ms. Deanna Morris is the collections manager for Southern Benefit Administrators, Inc., the third-party administrator for the Health & Welfare Fund. Mr. Don Dette is the training coordinator for the Training Fund. The National Pension Fund serves as the collection agent for the other 5 Appellee Funds. The audit reports from Calibre are attached as exhibits to the Anderson and Morris

*Americas LLC v. Brewer,* 867 F.3d 471, 480 (4th Cir. 2017) (noting "[a]n administrator's discretion never includes the authority to read out unambiguous provisions contained in an ERISA plan") (citations omitted).  As a signatory employer, Stromberg consented to this audit procedure.

Stromberg argues the auditor's calculations are inaccurate; however, it offers only unsupported assertions in a declaration that the audit is incorrect and that Stromberg was always in ratio.  *See* Appellant Br., p. 29 (citing unsupported testimony that "these calculations are not correct").  These assertions do not meet its burden.  "Where a benefit fund has conducted an audit and no other barriers to liability or damages exist, judgment is appropriate, absent some specific challenge to the audit's findings."  *Maryland Elec. Indus. Health Fund v. MESCO, Inc.,* No. CIV.A. ELH-12-505, 2014 WL 853237, at *14 (D. Md. Feb. 28, 2014); *Trustees of the Plumbers & Gasfitters Loc. 5 Ret., Sav. Fund v. Conditioned Air Sys., Inc.*, No. CIV. CCB-12-730, 2014 WL 1292105, at *8 (D. Md. Mar. 28, 2014) ("Where an employer's obligation to pay delinquent contributions is based on the results of an audit, courts typically find summary judgment appropriate unless the employer has identified specific errors or provided documentation to rebut the audit's conclusions.").  Circuit courts who have considered this question have gone either

---

declarations.  JA 2022-49, 2052-65.  Stromberg falsely states that the audit reports are not in the record.  Appellant Br., pp. 29-30.

further, finding once a plan "produce[s] evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed." *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988). *See also Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 697 (6th Cir. 1994); *Combs v. King,* 764 F.2d 818, 822-27 (11th Cir.1985).

Stromberg's series of bald – and false – allegations about the audits in its opening brief should not preclude summary judgment in favor of the Funds. For example, Stromberg alleges that the auditor classified all temporary workers as journeymen and applied no ratio to audit figures. Appellant Br., pp. 25-28. In truth, however, the auditor applied the 1:2 CBA ratio to the audit, which was clearly detailed on the face of the report. JA 2023 ("Ratio is 1 journeyman to 1 apprentice to 1 Classified Worker. Apprentice rates averaged from all levels on rate sheet."), JA 2055 (same). Stromberg alleges that it has paid contributions as the classified rate for all temporary sheet metal workers' hours. Appellant Br., p. 27. However, the audit report reveals that Stromberg substantially underreported work hours both by the temporary workers and regular sheet metal workers hired through the union.

Stromberg also advances the applicability of the Resolution 78 ratios. However, Stromberg's records were insufficient to allow the auditor to determine

which man hours were worked on the Mary Ellen Jones and New Bern sites, the only worksites to which the variance ration would apply, JA 2020, which was Stromberg's burden to prove. *Colin v. Marconi Com. Sys. Employees' Ret. Plan*, 335 F. Supp. 2d 590, 606 (M.D.N.C. 2004) ("[29 U.S.C. § 1059(a)] affects evidentiary burdens such that, when a plaintiff demonstrates the defendant's failure to comply . . . , the burden of proving the accuracy of employment or benefit records shifts to the defendant.").

In short, the audit process was thorough and conformed to plan documents. Stromberg "has failed to present any specific, documentary evidence to this Court demonstrating that erroneous calculations on particular employees form the basis of [the Funds'] damages claims," *Rabey Elec. Co.*, 2012 WL 3854932, at *6, which is fatal to its challenges to the audit. *See also Trustees of Nat'l Asbestos Workers Med. Fund v. Gamble Insulation Co.*, No. CV WDQ-04-291, 2006 WL 8456775, at *4 (D. Md. Jan. 4, 2006) (finding defendant's "bald" challenges to the damages calculation in the audit do not defeat summary judgment for plaintiff fund). The district court reached the same conclusion. Order, p. 19, JA 2218 (concluding Stromberg "has not come forward with any documentary evidence which would raise a genuine issue of material of fact on this issue").

Finally, Appellant takes issue with the admissibility of the audits as evidence. Appellant Br., pp. 31-37. At the outset, Appellees note that Stromberg seems to use

the terms 'hearsay,' 'accuracy,' and 'authenticity' interchangeably. To the extent Stromberg is now challenging the authenticity of the audit reports, it has waived that argument by not raising it below. Order, p. 18, JA 2217 ("Stromberg does not contend that the audit reports replied upon by plaintiffs [by] their affiants are not authentic."). An audit is simply a professional summary of an employer's voluminous payroll records, and thus is not hearsay. S*ee* Fed. R. Evid. 1006; *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.,* 41 F.3d 182, 189 (4th Cir. 1994); *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Harborview Healthcare Ctr. Inc.*, 191 F. Supp. 3d 13, 18 (D.D.C. 2016) (spreadsheets summarizing remittance reports and records of contributions are "admissible summaries of the voluminous underlying evidence which may be used to "prove the content" of the underlying documents). Lastly, Stromberg complains that it never deposed Calibre about the audits, Appellant Br., p. 34; however, it had every opportunity to do so.[8] Stromberg has failed to produce any evidence to rebut the audit.

In sum, the district court did not err in adopting Appellees' damages calculations, which utilize the work hours captured in the audit reports and the hourly pay rates set by the CBA ratio.

---

[8] The Funds disclosed the name and contact information for an individual with Calibre in their Rule 26(a) disclosures. The record also showed that Stromberg knew how to contact Calibre and often did.

28

## CONCLUSION

For the reasons set forth herein, the district court correctly granted judgment to the Appellee Funds.  The Court should **AFFIRM** the district court's order in its entirety and remand the matter to the district court for an award of reasonable attorneys' fees and costs.

/s/ Karla M. Campbell
Karla M. Campbell
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN  37203
(615) 254-8801
karlac@bsjfirm.com

Narendra K. Ghosh
PATTERSON HARKAVY, LLP
100 Europa Drive, Suite 420
Chapel Hill, NC  27517
(919) 942-5200
nghosh@pathlaw.com

Diana Migliaccio Bardes
MOONEY, GREEN, SAINDON,
MURPHY & WELCH, PC
1920 l Street, NW Suite 400
Washington, DC  20036
(202) 783-0010
dbardes@mooneygreen.com
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*6,810*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Office Word*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ Karla M. Campbell
Karla M. Campbell

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2022, I caused this Brief of Appellees to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record.


/s/ Karla M. Campbell
Karla M. Campbell