Case No. 21-2134

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

SHEET METAL WORKERS' HEALTH &
WELFARE FUND OF NORTH CAROLINA, et al.,

*Plaintiff/Appellees,*

v.

STROMBERG METAL WORKS, INC.,

*Defendant/Appellant.*

**REPLY BRIEF OF APPELLANT
STROMBERG METAL WORKS, INC.**

Douglas R. Pierce, Esq.
Michael D. Oesterle, Esq.
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
(615) 259-3456
dpierce@kingballow.com
moesterle@kingballow.com

Kirsten E. Small, Esq.
NEXSEN PRUET, LLC
104 South Main Street, Suite 900
Greenville, South Carolina 29601
(864) 282-1112
ksmall@nexsenpruet.com

*Counsel for Defendant/Appellant Stromberg Metal Works, Inc.*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................ ii, iii

ARGUMENT .................................................................................... 1

I.    THE ALLEGED AUDIT REPORTS ARE UNAUTHENTICATED, HEARSAY, AND INACCURATE .................................................. 2

    A.    Plaintiffs Have Refused to Address the Hearsay Issue ........................ 3

    B.    Plaintiffs Never Offered Evidence of Authenticity ............................. 6

    C.    The Alleged Audit Reports are Not Accurate ....................................... 9

    D.    Plaintiffs Have Not Now Created a Genuine Issue of Fact ................ 12

II.   THE CBA REQUIRES CONTRIBUTIONS BASED UPON EMPLOYEE CLASSIFICATION, NOT EMPLOYEE RATIOS ............... 15

    A.    The Ratios Do Not Relate to Contributions ........................................ 15

    B.    Stromberg, in Fact, Met the Ratios .................................................... 19

III.  THE CBA WAS MODIFIED BY THE GRIEVANCE AGREEMENT ...... 25

CONCLUSION ................................................................................. 28

<u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Cases**</u>

*Bakery & Confectionery Union and Indus. Int'l Pension Fund v. Ralph's*
    *Grocery Company,* 118 F.3d 1018 (4th Cir. 1997) ........................ 15, 26, 27

*Bristol Steel and Iron Works v. Bethlehem Steel Corp.,*
    41 F.3d 182 (4th Cir. 1994) .............................................................5

*Coleman v. Nationwide Life Ins. Co.,*
    969 F.2d 54 (4th Cir. 1992) ..........................................................17

*Humphrey & Partners Architects, L.P. v. Lessard Design, Inc.,*
    790 F.3d 532 (4th Cir. 2015) ......................................................7, 8

*Int'l Painters & Allied Trades Indus. Pension Fund v. Madison Coatings Co.,*
    2019 WL5625757 (D.Md. Oct. 31, 2019) .............................26, 27

*Jacobs v. N.C. Admin. Office of the Courts,*
    780 F.3d 562 (4th Cir. 2015) .......................................................23

*Maryland Elec. Indus. Health Fund v. MESCO, Inc.,*
    2014 WL853237 (D. Md. Feb. 28, 2014) ....................................10

*PEAT, Inc. v. Vanguard Research, Inc.,*
    378 F.3d 1154 (11th Cir. 2004) .....................................................4

*SEIU Nat'l Indus. Pension Fund v. Harborview Healthcare Ctr., Inc.,*
    191 F.Supp.3d 13 (D.D.C. 2016) ..................................................5

*SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.,*
    153 F.Supp.3d 363 (D.D.C. 2016) ................................................6

*Trustees of Construction Indus. & Laborers Health & Welfare Trust v.*
    *Interstate Hotel Installation,*
    2:12 cv 00353 MMD, 2013 WL 820000 (D. Nev. Mar. 5, 2013) ..........26, 27

## TABLE OF AUTHORITIES (Continued)

**Page**

*Trustees of Painters Union Deposit Fund v. Ybarra Construction Co.,*
   113 F.App'x 664 (6th Cir. 2004) ...................................................8

*Trustees of the Plumbers & Gasfitters Loc. 5 Ret. Sav. Fund v. Conditioned*
   *Air Syst., Inc.,* 2014 WL1292105 (D.Md. Mar. 28, 2014) ........................11

*United States v. Fahnbulleh*, 410 U.S. App. D.C. 18, 752 F.3d 470 (2014) ...........6

*United States v. Janati,*
   374 F.3d 263 (4th Cir. 2004) ....................................................3, 4

*Whitworth Bros. Storage Co. v. Central States, S.E. & S.W. Areas Pension Fund,*
   982 F.2d 1006 (6th Cir. 1993) .......................................................9

## Other Authorities

Fed.R.Civ.P. 36 .................................................................19

Fed.R.Civ.P. 56 ...............................................................8, 14

Fed.R.Evid. 901 ...............................................................7, 9

Fed.R.Evid. 902 ..................................................................9

Fed.R.Evid. 1006 .............................................................3, 4

E.D. N.C. Civ. Rule 56 ..........................................................14

31 Wright & Miller, *Federal Practice & Procedure* § 8043 (2d ed.) ......................4

**ARGUMENT**

Appellant Stromberg Metal Works Inc. ("Stromberg") submits the following Reply Brief. Appellees' (collectively "the Funds" or "Plaintiffs") Brief ("Plt. Br.") mischaracterize Stromberg's Opening Brief ("Strom. Br.") and ignores or fails to address squarely the issues presented therein. Additionally, Plaintiffs have failed to provide any citation to the Joint Appendix for the most significant factual statements in their Brief because there is no support for Plaintiffs' statements. When Plaintiffs do cite to the Joint Appendix, many citations do not support Plaintiffs' statements.

Plaintiffs' statement that Stromberg "has raised only one narrow defense as to liability and more generally challenges the district courts calculation of damages" (Plt. Br., p. 6) is erroneous as evidenced by the entirety of Stromberg's brief. Although Stromberg also does not challenge the portions of the lower court judgment relating to various motions to strike because they are unnecessary for this appeal, Plaintiffs have incorrectly stated that Stromberg is not challenging the district court's award of attorneys' fees and cost to the Funds because there has been no such award.[1]

---

[1] Plaintiffs also stated, "Stromberg does not dispute the Court's interpretation of the relevant terms of the CBA" (Plt. Br., p. 9), however, Plaintiffs did not explain this vague statement.  Therefore, Stromberg cannot respond to it and does not agree to it.

Plaintiffs state the "crux of the party's dispute" is whether Stromberg owes contributions for work of "temporary sheet metal workers hired by Stromberg through staffing agencies." (Plt. Br., p. 8). This is not the crux of the dispute, but rather the background of the dispute because it is undisputed that Stromberg did make contributions for those workers ("Temporary Workers"). The crux of the dispute is whether the contributions should be paid at the Journeyman rate or the Classified employee rate.

## I.

## THE ALLEGED AUDIT REPORTS ARE UNAUTHENTICATED, HEARSAY, AND INACCURATE

Plaintiffs' Brief fully confirms the hearsay nature of the alleged audit reports. Throughout their Brief, Plaintiffs repeatedly cite to the alleged audit reports as though they somehow prove anything, but they do not. In response to Stromberg's lead argument, Plaintiffs bury in a footnote that, "The audit reports from Calibre are attached as exhibits to the Anderson and Morris Declarations." (Plt. Br., pp. 24-25, n. 7). Plaintiffs fail to mention that neither Declaration contains any language authenticating – or even identifying – the attached documents. Indeed, Plaintiffs have offered no witness who has made any reference to the documents attached to the Anderson and Morris Declarations. It seems obvious that when Morris and Anderson signed their Declarations, they had no idea there would be any exhibits to their declarations, and these attachments were made without their knowledge.

2

Plaintiffs claim they are entitled to rely upon audits. (Plt. Br., p. 23). Plaintiffs, however, have refused to offer any admissible evidence of such audit results. Plaintiffs also claim "the audit process was thorough and conformed to plan documents." (Plt. Br., p. 27). Plaintiffs have built their entire case around this proposition, yet they cite no proof for that statement. There is no such proof because no auditor has offered any testimony.

## A.     Plaintiffs Have Refused to Address the Hearsay Issue

In response to Stromberg's detailed explanation that the audit reports were hearsay (Strom. Br., pp. 25-28), Plaintiffs devote only one page to this issue. (Plt. Br., pp. 27-28). Plaintiffs argue, without explaining the significance of the point, that Stromberg "seems" to use "'hearsay,' 'accuracy,' and 'authenticity'" interchangeably. (*Id.*). This is not an accurate characterization of Stromberg's Brief. If Plaintiffs truly have any confusion in this regard, it is likely because they have sought to rely upon alleged audit reports having all three of these infirmities.

Stromberg explained there is no hearsay exception for payroll audit reports and Plaintiffs have not contended otherwise. Instead, Plaintiffs claim these alleged audit reports should be admissible because they are summaries. However, summaries are not an exception to the hearsay rule. *See* Fed .R. Evid. 803 & 804. In *United States v. Janati,* 374 F.3d 263 (4th Cir. 2004), this Court recognized that the purpose of Federal Rule of Evidence 1006 is to allow summaries "into evidence

3

as a surrogate for underlying voluminous records *that would otherwise be admissible into evidence*." *Id.* at 272 (emphasis added). "To comply with this Rule, therefore, a chart summarizing evidence must be an *accurate* compilation of the voluminous records sought to be summarized." *Id.* (emphasis in original, citation omitted). Therefore, Rule 1006 does not allow a summary based upon hearsay. *PEAT, Inc. v. Vanguard Research, Inc.,* 378 F.3d 1154, 1159-60 (11th Cir. 2004); *see* 31 Wright & Miller, *Federal Practice & Procedure* § 8043 (2d ed.) ("Rule 1006 evidence . . . may be excluded where the summarized source materials are inadmissible hearsay[.]").

In *PEAT,* the court reversed a district court's admittance of a summary based upon hearsay, explaining that "Rule 1006 is not a back-door vehicle for the introduction of evidence which is otherwise inadmissible." *PEAT,* 378 F.3d at 1160. Plaintiffs' reliance upon Rule 1006 is nothing more than a back-door attempt to introduce what they do not deny is based upon hearsay. Also, Plaintiffs cannot rely on Rule 1006 because they have failed to establish the necessary predicates of admissibility.[2]  No witness has suggested in any way that these documents are summaries, and more significantly, no witness has said these documents are accurate summaries.

---

[2] Rule 1006 and case law also require that if Plaintiffs seek to introduce a summary, they must provide Stromberg with the "underlying documentation." *Janati,* 374 F.3d at 273.

Plaintiffs' reliance upon *Bristol Steel and Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182 (4th Cir. 1994) is unavailing because the document in that case was a summary that "had been introduced" into evidence. *Id*. at 185. Generally, *Bristol* stands for the proposition that if a proper summary is available and introduced into evidence, the underlying documents upon which the summaries are based need not be introduced. However, *Bristol Steel* has no application here because no witness has suggested the alleged audit reports are either summaries or accurate, and no witness has introduced them into evidence. Introducing a document into evidence requires more than just counsel filing the document.

Likewise, Plaintiffs' reliance upon *SEIU Nat'l Indus. Pension Fund v. Harborview Healthcare Ctr, Inc*., 191 F.Supp.3d 13 (D.D.C. 2016) is misplaced because it also establishes that summaries, *if properly admitted,* may be relied upon in summary judgment. Although Plaintiffs did not mention it, *Harborview* also involved the same Declarant as in this case, Kenneth Anderson. *Harborview* makes clear that Anderson had many exhibits to his declaration, but there is no suggestion he did not properly identify each exhibit, or at least mention them. *Harborview* demonstrates the glaring deficiency in Plaintiffs' proof; they cannot rely upon

documents their counsel places into the record with no witness even mentioning the document.[3]

In another case involving Anderson as a declarant, the court expressly held "the witness who prepared the summary should introduce it." *SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr. Inc*., 153 F.Supp.3d 363, 374 (D.D.C. 2016) (citing *United States v. Fahnbulleh*, 752 F.3d. 470, 479, 410 U.S. App. DC 18 (D.C. Cir 2014)). Here, neither Anderson nor Morris either prepared or introduced their Declaration attachments.

## B.    Plaintiffs Never Offered Evidence of Authenticity

Plaintiffs do not deny the alleged audit reports were never authenticated. They argue Stromberg waived that objection.  Stromberg has never agreed these unauthenticated hearsay documents are what Plaintiffs' counsel says they are, and the district court incorrectly stated Stromberg did not contest authenticity.  In Stromberg's Response to Plaintiffs' Motion for Summary Judgment, Stromberg explained these were inadmissible and they were only "*alleged* audit reports." (DE

---

[3] Although, Anderson and Morris claim they were provided with the "audit," neither states that the documents attached to their Declaration are the "audit" or any summary thereof.  (JA 2001-02, 2032). Indeed, they never acknowledged that there were any attachments to their Declarations.  Further, these statements confirm the hearsay nature of whatever it was they received.

73, pp. 1, 22 (emphasis added)).[4]  Stromberg has never agreed these reports were authentic, but rather stated they were only "*allegedly* prepared by Calibre CPA Group." (*Id*.).  As previously stated (Strom. Br., p. 32), to establish authenticity, the proponent of a piece of evidence "must produce *evidence*" to show that the document is what Plaintiffs say it is.  Fed. R. Evid. 901(a) (emphasis added).  Plaintiffs made no effort to do this; none of Plaintiffs' witnesses ever mentioned any exhibits attached to the Anderson and Morris Declarations.

Ultimately, the district court has discretion in deciding whether to consider evidence at the summary judgement stage.  *Humphrey & Partners Architects, L.P. v. Lessard Design, Inc.,* 790 F.3d 532, 538 (4th Cir. 2015).  By relying upon a document that no witness suggested was accurate or even mentioned, the district court abused its discretion.  In *Humphreys & Partners,* the non-moving party objected to the moving party's reliance upon unsworn expert reports to support summary judgement on the grounds that these reports were "inadmissible hearsay." *Id.*  This Court observed that when a nonmovant objects to certain evidence, "the movant has the burden 'to show that the material is admissible as presented or explain the admissible form that is anticipated'." *Id.* at 538-39 (citations omitted). In that case, the Court concluded the district court did not abuse its discretion in

---

[4] As used herein, "DE" refers to the District Court Docket Entries not included in the Joint Appendix.

considering the expert reports because the moving party both explained the admissible form that was anticipated and submitted sworn declarations "from the experts attesting that they 'would testify to the matters set forth in'" their reports. *Id.* at 539. In this case, Plaintiffs did neither.

Plaintiffs had sufficient notice to correct the hearsay and authentication deficiencies in the alleged audit reports, but Plaintiffs chose not to do so. It would have been a simple matter to obtain from the auditors a declaration confirming the authenticity and accuracy of the alleged audit reports, if in fact they were authentic and accurate. Conspicuously absent, however, is any effort by the auditors to vouch for these reports. In contrast, as more fully explained below, Stromberg has shown with admissible evidence that it made the correct contributions and that the alleged audit reports are inaccurate. (JA 2050-51). Fundamental principles of summary judgment and the rules of evidence prohibit a litigant's counsel from simply inserting documents into the record without anyone identifying them or vouching for their accuracy. Fed.R.Civ.P. 56(c) (requiring that evidence for summary judgement be admissible evidence and that affidavits "be made on personal knowledge.").

Plaintiffs also state, "Stromberg complains that it never deposed Calibre about the audits." (Plt. Br., p. 28). At no point did Stromberg make such a complaint or suggestion. Stromberg simply explained that in *Trustees of Painters Union Deposit Fund v. Ybarra Construction Co.,* 113 F.App'x 664, 669 (6th Cir. 2004) the auditor's

testimony was presented by deposition. (Strom. Br., p. 34). Rule 901 required Plaintiffs to present some evidence about the alleged audit reports, which could have been done by declaration, affidavit, deposition, or perhaps some other means. The fact that Plaintiffs have not used any means to introduce into evidence the alleged audit reports strongly suggests those alleged reports are not accurate or valid. They certainly are not admissible evidence.

Certain documents are self-authenticating, however, the alleged audit report is clearly not within that class. Fed. R. Evid. 902. Essentially, Plaintiffs are requesting this Court to create a new exception in Rule 902 to designate payroll audit reports as self-authenticating, but there is no justification for that request.

## C. The Alleged Audit Reports are Not Accurate

Plaintiffs observed that funds such as theirs operate on a self-reporting system, whereby the employer creates and maintains records establishing the accuracy of its contributions. (Plt. Br., p. 23) (citing *Whitworth Bros. Storage Co. v. Central States, S.E. & S.W. Areas Pension Fund,* 982 F.2d 1006, 1018 (6th Cir. 1993)). The Declarations of Kathleen Bigelow presented in this case established that she is the person at Stromberg who makes the calculations for contributions to be made to each of the Plaintiffs and that she has done this for several decades. (JA 461). Further, Bigelow was primarily responsible for dealing with the audit at issue in this case. (JA 2048). In connection with this case, she reviewed the "calculations that are

9

attached as exhibits to the Anderson and Morris Declarations." (JA 2050). Bigelow then states unequivocally, "These calculations are not correct" (*Id.*).

Plaintiffs urge the Court to ignore this unequivocal testimony by someone with personal knowledge on the grounds that Bigelow's statement was "unsupported" and a "bald" denial of the purported audit findings without a specific challenge. (Plt. Br., p. 25). Plaintiffs have conveniently ignored the body of Bigelow's Declaration and have grossly misread the relevant law.

In her Declaration, Bigelow made clear she was not making a "bald" denial: she supported her conclusion with "specific challenges to the audit findings." *Maryland Elec. Indus. Health Fund v. MESCO, Inc.,* 2014 WL853237, at *14 (D. Md. Feb. 28, 2014). Bigelow identified at least three specific challenges concerning the methodology of the alleged audit report. First, she stated that instead of treating only some of the Temporary Workers as Classified employees and some as Journeymen, the alleged audit report treated all as Journeymen. (JA 2050). Second, Bigelow stated that Stromberg has always been within the ratios set forth in the relevant collective bargaining agreement ("CBA") and Resolution 78 Agreements ("Resolution 78s"). *(Id.)*. Third, she explained the alleged audit report was premised upon contributions being made at the Journeyman rate for all of the Temporary Workers. (JA 2051). Therefore, Bigelow explained not with conclusory allegations, but rather with specific explanation as to why the alleged audit report was incorrect.

10

This is not a case where the employer is challenging particular hours that may have been worked or the calculation of the numbers: this is a challenge to the methodology reflected in the alleged audit report. In response, Plaintiffs simply say that Bigelow is wrong, and for their authority, cite to pages of the alleged audit report that no witness has identified, no witness has said is accurate, and which is clearly hearsay. If there is any interpretation of the audit that is "unsupported," it is Plaintiffs' reliance upon the alleged audit reports, with no witness supporting the interpretation Plaintiffs' counsel advocates.

Another case cited by Plaintiffs is *Trustees of the Plumbers & Gasfitters Loc. 5 Ret. Sav. Fund v. Conditioned Air Syst., Inc.,* No. CIV.CCB-12-730, 2014 WL1292105 (D.Md. Mar. 28, 2014). "Where an employer's obligation to pay delinquent contributions is based on the results of an audit, courts typically find summary judgment appropriate *unless the employer has identified specific errors or provided documentation to rebut the audit's conclusions.*" *Id. at * 27* (emphasis added). *Conditioned Air Systems* supports Stromberg because Bigelow did explain with specificity what was wrong with the alleged audit report. She explained the faults in this document were across-the-board errors in methodology. In *Conditional Air Systems*, the court did *not* summarily accept an audit report as to one fund where the employer challenged the methodology of the audit used for that fund. *Id.* at * 11.

Plaintiffs also argue Bigelow was wrong in stating the alleged audit was incorrect. If so, Plaintiffs, at a minimum, created a genuine issue of material fact that would preclude their summary judgement. However, the record shows Bigelow's evaluation of the alleged audit is both correct and uncontested. Plaintiffs claim the record shows the 1:2 ratio was applied because the alleged audit reports show this. (Plt. Br., p.26). Specifically, Plaintiffs cite to JA 2023. This page contains no indication of any ratio, but rather Stromberg's overpayment. Nor does the alleged audit report ever state that any ratio was actually applied. It would have been a simple matter for Plaintiffs to submit an affidavit to counter what Bigelow said concerning how the alleged audit report treated all employees as Journeymen if Bigelow was wrong, but Plaintiffs could not do so.

Anderson admits the auditors did not apply the 1:4 ratio, but he never suggests the auditors applied the 1:2 ratio. (JA 2002). As Bigelow stated, the alleged audit seeks to treat all employees as Journeymen, which means no ratio was applied. (JA 2050). The record shows none of Plaintiffs' witnesses have any personal knowledge about what the auditors did or did not do.

**D.    Plaintiffs Have Not Now Created a Genuine Issue of Fact**

In an apparent attempt to avoid summary judgement being entered against them, Plaintiffs suggest this case might involve more than what they call the "crux" of the case, i.e., Temporary Workers. In footnote two of their Brief, Plaintiffs

mention a footnote of the district court's Order stating "Stromberg does not appear to contest the findings of the audit which reflect that it failed to make some contributions of Local 5 and Local 100 members" because Stromberg "did not respond to this argument in its reply." (Plt. Br., p. 8, n 2, citing JA 2195).[5] Because Local 100 was the Virginia local, and the temporary workers were on North Carolina jobs only, presumably Plaintiffs are mentioning this footnote to suggest this case involves more than just the Temporary Workers. Yet that suggestion runs contrary to Plaintiffs' statement that the Temporary Workers are the "crux," which means deciding point. Moreover, the district court's footnote on this point was disingenuous for two reasons.

First, Stromberg has consistently made it abundantly clear that it does not believe Plaintiffs have produced any audit report that suggests that there are any contributions owed for Local 5 or Local 100. Second, as authority for its footnote 4, the court cited DE 76 and 79. DE 76 was Plaintiffs' Response to Stromberg's Motion for Summary Judgment and DE 79 was Stromberg's Reply to that Response. By Court order, Stromberg's Reply was limited to five pages, and as with all replies, it was not expected to repeat what had already been stated in the original motion filing. (DE 30, p. 8). With its original Motion for Summary Judgment, Stromberg

---

[5] Plaintiffs miscited this page as JA 2213.

13

filed a separate statement of undisputed material facts, as required by Local Court Rules.[6] (DE 59). Fact 13 of that statement specifically said that the issue in dispute was only the North Carolina jobs. Plaintiffs originally responded to Fact 13 by saying that the statement was disputed, but without citing any portion of the record as required by Local Rule 56.01(c)(3). (DE 78, p. 4).

When Stromberg objected to Plaintiffs' practice of claiming that fact statements were disputed without offering any portion of the record to support Plaintiffs' position (DE 86, pp. 1-2), Plaintiffs filed a revised response to Stromberg's statement of facts. (DE 92-1). In their revised response, Plaintiffs again said that Fact 13 (that the case was limited to North Carolina jobs) was disputed, and cited "Dkt 75, ¶8", to show that it was disputed. However, a review of DE 75, paragraph 8 shows that this portion of the record bears absolutely no relationship to Fact 13. *Id*. Throughout this entire case, and continuing on appeal, Plaintiffs have either cited no authority for factual statements or cited incorrect authority.

---

[6] These are the Local Rules of the United States District Court for the Middle District of Tennessee, where this case was pending when these summary judgment papers were filed. Local Rule 56.1(a)(4) of the Eastern District of North Carolina contains a similar requirement that summary judgment motions be filed with a separate statement of facts that must be both supported and disputed with "citation to evidence that would be admissible." Both Local Rules generally apply the same requirement found in Federal Rule of Civil Procedure 56(e).

Regardless of what the Parties said in their motion papers, including Responses and Replies, the Declarations Plaintiffs offered show no reference to Local 100 or any jobs in Virginia.  (JA 1999-2000, 2001-03, 2032-33).

## II.

## THE CBA REQUIRES CONTRIBUTIONS BASED UPON EMPLOYEE CLASSIFICATION, NOT EMPLOYEE RATIOS

Even if the above stated deficiencies in the principal document Plaintiffs rely upon did not warrant summary judgement in Stromberg's favor, Stromberg would still be entitled to summary judgement because, as a matter of law, Stromberg was not required to make contributions to meet some ratio.  Also, although not required to meet those ratios for contribution purposes, Stromberg did in fact meet the ratios when both the 1:2 and 1:4 ratios were applied where applicable.

## A.     The Ratios Do Not Relate to Contributions

Plaintiffs correctly note that ERISA requires that Stromberg make contribution to Plaintiffs "in accordance with the terms and conditions of such a plan or such" CBA.  (Plt. Br., p. 7 citing 29 U.S.C. §1145). Plaintiffs further state an "employer's obligation to a employer fund is determined by the plain meaning of the language used in the collective bargaining agreement." (Plt. Br., p. 11 citing *Bakery & Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.,* 118 F.3d 1018, 1021 (4th Cir. 1997)). Plaintiffs also correctly state that "the hourly contribution rates depend on the classification of the employee performing

15

the covered work" and Plaintiffs specifically admit the rates are much higher for Journeymen than Classified employees. (Plt. Br., p. 3). After acknowledging that the contributions are controlled by the agreement between Stromberg and the union and that the relevant CBA specifies a higher rate for Journeymen than Classified employees, Plaintiffs request that the CBA be ignored and that Classified employees have contribution rates the same as Journeymen.

Plaintiffs claim they seek application of "the literal terms" of the CBA. (Plt. Br., pp. 12, 13, citations omitted), but the literal terms of the CBA, as Plaintiffs admit, establish that contributions for Classified employees will be much lower than for Journeymen. Plaintiffs do not deny that Stromberg made the appropriate contributions if the employees in question were Classified employees. Plaintiffs simply seek the higher Journeyman rate for persons who were clearly not Journeymen.

The record is clear that no one is deemed a Journeyman if they are not a Journeyman, and Journeyman status is not based upon skill, experience or pay rate. (JA 60). Journeyman (as well as Apprentice and Pre-apprentice) is a designated status. If someone has it, they have it, and if they don't, they don't. It is a clear, bright line test not dependent upon some case-by-case evaluation of a particular employee. Despite these clear facts, Plaintiffs' case is based upon deeming a great many Classified employees to be Journeymen to inflate contributions. Neither the

CBA nor any other document allows this fictitious deeming of non-Journeymen to be Journeymen. (JA 532). Plaintiffs only rationale for this argument is that it allows them to recover more money in contributions, which is not a valid principle of contract interpretation.

Plaintiffs' repeated assertion that they have an obligation to seek delinquent contributions begs the question as to whether there was any delinquency. Plaintiffs do not have the right to seek more than what Stromberg was required to contribute. Plaintiffs falsely state that Stromberg is requiring Plaintiffs to demonstrate a "detrimental reliance on the ratios." (Plt. Br., p 20). Stromberg merely said Plaintiffs could not rely upon the ratios to affect contributions. (Strom. Br., p. 40)[7]

Plaintiffs also completely failed to respond to the undisputed fact that the CBA ratios exist to achieve "a certain level of productivity and skill on the job" and for no other purpose. (JA 525). Plaintiffs do not have standing to enforce a CBA provision that relates to only the quality of work performed on a construction site.

---

[7] In their Footnote 4, Plaintiffs seek to rely upon an estoppel theory because Stromberg made contributions solely to "buy its peace in the workplace." (Plt. Br., p. 14, n. 4; JA 466). These contributions Stromberg made were at the Classified employee rate, not the Journeyman rate Plaintiffs seek in this case. (JA 2051). Therefore, Stromberg gets the benefit of having made those contributions, but it never did anything to suggest it owed the contributions at the Journeyman rate. Moreover, Plaintiffs cited no authority for their estoppel argument and that theory does not apply in ERISA cases. *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 58 (4th Cir. 1992).

Skill and productivity on the job will not be enhanced by deeming someone to be a Journeyman when they are not a Journeyman.

Nor can Plaintiffs respond to the many impracticalities of imposing ratios for contributions. Deeming employees to be some classification they are not simply to fit a ratio is not workable. (Strom. Br., pp. 42-44). Indeed, Plaintiffs recognize the impracticality of their approach, so they cut though this Gordian Knot by *not* applying *any* ratios. Rather, they have treated all employees as Journeymen (JA 2050), which is a clear violation of the CBA.

Plaintiffs admit they have no authority suggesting that CBA ratios should be applied to determine contribution rates. They certainly have no case law supporting such a reclassification of employees based upon a ratio that exists for the sole purpose of establishing productivity and skill on the job. (JA 525). Those considerations have nothing to do with setting contribution rates. Plaintiffs are putting the cart before the horse: job classifications establish whether the ratio is met, the ratio does not establish someone's classification. Plaintiffs admit they "do not routinely enforce the ratios" (Plt. Br., p. 21), but they never suggest they have *ever* tried this approach. Their explanation for not previously trying this approach is because other "employers do not routinely violate the referral procedure." (Plt. Br., p. 21). Again, Plaintiffs cite no legal or factual support for these statements. Moreover, referrals have nothing to do with job classification. *Infra,* part II.B.

18

Nor have Plaintiffs made any effort to refute the obvious reason why all Classified employees should have contributions lower than Journeymen contributions. There is a lower contribution rate for non-Journeymen because Plaintiffs provide a lower level of benefits to non-Journeymen. (JA 60). Stromberg made this perfectly clear in its opening Brief. (Strom. Br., pp. 7, 44). Plaintiffs' suggestion that they will suffer "injury" (Plt. Br., p. 22) completely ignores this point. What Plaintiffs are seeking to do in this case is collect Journeymen contributions, but only provide Classified employee benefits. Plaintiffs have not used any ratio to designate any group of Classified employees as Journeymen for the purpose of receiving *benefits*. Any attempt to make such a benefit designation would be the very apex of arbitrariness, i.e., to pick some Classified employees for higher benefits and not others.

## B.   **Stromberg, in Fact, Met the Ratios**

After demanding that the CBA 1:2 ratio be applied, Plaintiffs then argued the 1:4 ratio of the Resolution 78s should not be applied, even though Plaintiffs admitted under Federal Rule of Civil Procedure 36 that the Resolution 78s govern Fund contributions. (JA 185-86). Bigelow stated unequivocally that after applying both the 1:2 and 1:4 ratios where appropriate for those jobs covered by the Resolution

78s,[8] Stromberg actually met these ratios for contributions. (JA 2050). Plaintiffs do not deny this, but they convinced the district court to disallow the 1:4 ratio. This is another lower court error.

The "logic" Plaintiffs convinced the district court to follow is:

1.     Stromberg failed to refer the temporary worker to the union.

2.     Therefore, the union could not evaluate their skills and experience.

3.     Therefore, those workers could not be properly classified at that time.

4.     Therefore, the auditor should not be required to apply the 1:4 ratio because that would require it to comb through records which would be too burdensome.

5.     Even if not burdensome, the auditors could not comb through records because Stromberg had not maintained adequate records.

6.     Therefore, the auditors were entitled to apply the 1:2 ratio.

(JA 2195, 2197). The record shows a number of factual errors in this "logic," any one of which causes the entire house of cards to fall.

**As to point 1,** Plaintiffs cite JA 1859 for the proposition that such referrals are required. This page does not address referrals. Neither Plaintiffs nor the district court explained the referral process. Under the CBA, the only employees Stromberg was required to refer were persons it hired directly because the union did not supply

---

[8] The Resolution 78 jobs were the two large jobs at issue here, the Mary Ellen Jones job and the New Bern job. (*See* Strom. Br., pp. 7-8).

20

requested workers, and by definition these persons were Classified workers. (JA 89, Art. XIII). Therefore, the CBA confirms that if there was anyone Stromberg failed to refer to the union, that person was necessarily a Classified worker.

**As to point 2,** there is nothing in the record to suggest that the union would evaluate skill and experience to determine classification. Indeed, the record shows that is not how classification is determined. (JA 60). Stromberg's Brief made very clear how classifications are determined: Journeyman is a designated status that is achieved pursuant to the CBA and recorded by the local union (JA 60, 555); Apprentice status is determined by whether the employee is enrolled in the apprenticeship program (JA 499, 714); and, Pre-Apprentices are signed up by the apprenticeship program to begin with the next class. (JA 504, 715). Further, an employee not in one of those three classifications is necessarily a Classified employee under the CBA. (JA 509).

The district court erred when it stated that the union would have to evaluate an employee's skill and experience to determine their classification under the CBA. (JA 2197). There is no support in the record for that conclusion. Plaintiffs can point to nothing in the CBA requiring the union to evaluate some's skills and experience to determine their classification. To the contrary, the CBA specifically addresses the method a person becomes a Journeyman if they did not complete an apprenticeship program and the record fully establishes that skill and experience do

21

not establish classification under the CBA. (JA 98). Plaintiffs ignore these clear provisions of the record and rely upon the lower court's erroneous and unsupported statement to achieve a result that violates the literal terms of the CBA.

**As to point 3,** the auditor could have easily determined proper classification by checking with the union to see if any were listed as Journeymen, Apprentices, or Pre-apprentices because it is the union that maintains the classifications. (JA 555). Plaintiffs argue the simple process of confirming with the union whether an employee has Journeyman, Apprentice or Pre-apprentice status will not work because Stromberg did not refer employees to the union. Plaintiffs cite to no part of the record for this absurd and erroneous argument. Referrals to the union have no bearing on determining whether any person's status is anything other than a Classified employee. (JA 89, Art. XIII). If Stromberg hired employees off the street, but did not refer any of them to the union, that is not going to change the union's list of persons it has recorded as Journeymen, Apprentices or Pre-apprentices. Therefore, unless the union has such employees listed as Journeymen, Apprentice or Pre-apprentice, the auditor or Plaintiffs simply must under Article XIII of the CBA classify the employees as Classified employee by default.

**As to point 4,** there was no need to comb through Stromberg's records because, as just stated, the union already has the employee's classification. Moreover, Bigelow testified upon personal knowledge that Stromberg had adequate

records to apply the 1:4 ratio, and Plaintiffs countered with only Anderson who had no personal knowledge of Stromberg records.  Therefore, even if it were necessary to review Stromberg's records to make classification determinations, the undisputed admissible evidence shows Stromberg had the proper records to allow this review. (JA 2049).

**As to point 5,** the district court relied upon Anderson's statement that Stromberg did not maintain adequate records to permit application of the 1:4 ratio. (JA 2199).  On its face, this statement by Anderson is clearly hearsay because he shows this information came from the auditor. (JA 2002). Moreover, Stromberg made clear to the district court, and now on appeal (Strom. Br., pp. 34-37), that Anderson was wrong, he was not present for the audit, and he had no information concerning Stromberg records that would allow application of the 1:4 ratio. (JA 2049).  By ignoring contrary testimony by someone with personal knowledge the district court erred. *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015).  Refusing to consider contrary evidence is so erroneous that Plaintiffs have made no effort to defend the district court in this regard.  Plaintiffs simply argue that Stromberg did not have accurate records despite Bigelow stating it did and Anderson stating only that some unnamed person told him otherwise.

**As to point 6,** even if all the previous points were valid, it would still be completely inconsistent to say there was insufficient information to apply a 1:4 ratio,

but somehow there was sufficient information to apply a 1:2 ratio, because according to Plaintiffs, both ratios are dependent upon job classification. Plaintiffs recognize this inconsistency as shown when Bigelow explained that the alleged audit report applied no ratio. (JA 2050). Plaintiffs offered no contrary evidence, and therefore the district court's conclusion that in entering judgment it was applying a 1:2 ratio was mistaken, which means Plaintiffs have sought and obtained a result contrary to the CBA (assuming that ratios affect contribution as Plaintiffs contend).

In other words, Plaintiffs argued for the 1:2 ratio and the district court stated that it was applying the 1:2 ratio. The court, however, entered judgment for a specific dollar amount based upon the alleged audit that had no ratio because it classified all employees as Journeymen. (JA 2050). This inconsistency was inherent in the illogical conclusion that there was *insufficient* information to apply the 1:4, but *sufficient* information to apply the 1:2. Specifically, the court ruled Plaintiffs did not have to apply the 1:4 because Stromberg had prevented proper classification of the employees when it did not allow the union to evaluate the employees' skill and experience. (JA 2197). However, if it were necessary to determine employee skill and experience for proper classification, then such a determination would be necessary regardless of whether the ratio to be applied were 1:2, or 1:4, or any other ratio. It is logically inconsistent to say skill and experience was necessary to establish classification for a 1:4 ratio, but not a 1:2 ratio. Yet this is how the district

24

court ruled, and Plaintiffs have been completely unable to address to this inconsistency.

The record shows Stromberg presented clear, uncontested evidence that its contributions met the 1:2 and 1:4 ratios for the appropriate jobs, and Plaintiffs have offered only inadmissible hearsay in opposition. Therefore, even if this Court were to rule that the ratios required that employees be deemed some classification other than their correct classification, summary judgment should be granted in favor of Stromberg.

## III.

## THE CBA WAS MODIFIED BY THE GRIEVANCE AGREEMENT

Plaintiffs state Stromberg is not challenging whether the temporary workers were Stromberg's employees. As an alternative argument, however, Stromberg has explained that the resolution of the subcontracting grievance memorialized in the January 14, 2019 grievance settlement agreement ("Grievance Agreement") confirmed that the Temporary Workers were employees of the temporary employment agencies, not Stromberg, for whom no contributions are owed. (Strom. Br., pp. 44-50) (JA 469, 471-72). Therefore, even if summary judgment in

Stromberg's favor were not warranted under either the first two issues presented herein, it would still be warranted because of the Grievance Agreement.[9]

Plaintiffs argue employers are prohibited from raising "defenses that attempt to show that the union and the employer agreed to different terms from those set forth in the agreement." *Ralph's Grocery,* 118 F 3d at 1021. In this case, however, the Grievance Agreement modifies the CBA, and Plaintiffs have agreed the CBA can be modified.

*Ralph's Grocery* did not involve a grievance settlement as was the case in *Trustees of Construction Indus. & Laborers Health & Welfare Trust v. Interstate Hotel Installation*, 2:12-cv-00353-MMD, 2013 WL 820000 (D. Nev. Mar. 5, 2013). Although *Interstate Hotel* is directly on point, Plaintiffs urge this Court to ignore that decision claiming that *Int'l Painters & Allied Trades Indus. Pension Fund v. Madison Coatings Co.,* No. 17-1559, 2019 WL5625759 (D.Md. Oct. 31, 2019) should be followed. *Madison Coatings,* however, did not involve a grievance settlement agreement or any agreement between the employer in the union. Rather, it involved a settlement agreement between the employer and another ERISA fund.

---

[9] Plaintiffs do not deny that Stromberg's interpretation of the Grievance Settlement Agreement precludes Plaintiffs' claims. To the extent Plaintiffs may disagree with Stromberg's interpretation when they quoted Don Dette's deposition (Plt. Br., p. 15), this would only create an issue of fact that would preclude summary judgment, assuming either of the previous issues did not already establish summary judgment for Stromberg. Also, although Dette said he was not the pension or health funds, he was an official of the Plaintiff Apprenticeship Fund. (JA 1999).

*Id.* at * 3-4. As such, any attempt to apply *Madison Coatings* to the Grievance Agreement in this case would be contrary to the *Ralph's Grocery* requirement that the agreement be with the union.

Plaintiffs have failed to respond to Stromberg's argument that this case presents a more compelling reason to apply the Grievance Agreement than *Interstate Hotel* because Plaintiffs were present for the negotiations that resulted in the Grievance Agreement and were even copied on the memorialization of that agreement. (JA 62, 446-47, 456, 457, 661, 663, 1999). Likewise, Plaintiffs have failed to explain how they are subject to the Resolution 78s, but not the Grievance Agreement. Plaintiffs were not present for the Resolution 78s negotiations, but they have admitted in this litigation that they are bound by those agreements. (JA 185-86). Accordingly, because they are bound by the Resolution 78s they are bound by the Grievance Agreement.

Just as the union and Stromberg can agree in the CBA that certain employees will be subject to contribution at certain rates, these same two parties can agree to modify the CBA to exclude certain persons who arguably would otherwise by subject to contributions. Specifically, subcontracting was approved by the Union which meant that the Temporary Workers remained employees of the temporary agencies for whom Stromberg did not owe contributions.

27

## CONCLUSION

Although Stromberg initially questioned whether it had an obligation to contribute for the Temporary Workers, it made those contributions to "buy its peace" in the workplace. (JA 466).  Having made those contributions, it should not be subjected to Plaintiffs' exotic theory of contributions based upon ratios that is contrary to the CBA. Moreover, Plaintiffs' Motion for Summary Judgment was based upon inadmissible hearsay while Stromberg's cross motion was based upon admissible evidence showing that it is entitled to judgment as a matter of law. Therefore, the Court should reverse the district court's grant of summary judgment for Plaintiffs and direct the entry of summary judgment for Stromberg.

April 7, 2022

Respectfully Submitted,

KING & BALLOW

*/s/Douglas R. Pierce*
Douglas R. Pierce, Esq.
Michael D. Oesterle, Esq.
KING & BALLOW
315 Union Street
Suite 1100
Nashville, Tennessee 37201
(615) 259-3456 (Telephone)
dpierce@kingballow.com (Email)
moesterle@kingballow.com (Email)

Kirsten E. Small, Esq.
NEXSEN PRUET, LLC
104 South Main Street, Suite 900
Greenville, South Carolina 29601
(864)282-1112
ksmall@nexsenpruet.com (Email)

Counsel for *Appellant Stromberg Metal Works, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g)(8), the undersigned certifies this reply brief complies with the type-volume limitations of FRAP 32(a)(7)(B)(i). As counted by the Microsoft Word 2017-word count tool, this principle brief contains 6,492 words.

This brief complies with the typeface requirements in FRAP 32(a)(6) because this reply brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated: April 7, 2022

*/s/Douglas R. Pierce*

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of this Brief was electronically filed and served via the Court's CM/ECF electronic filing system to all counsel of record on this the 7th day of April, 2022.

*/s/Douglas R. Pierce*